# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RUFUS HUMPHREY,

    Petitioner,

    -vs-

WARDEN, LONDON CORRECTIONAL INSTITUTION,

    Respondent.

:

Case No. 3:04-cv-301

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. §2254 for a writ of habeas corpus which is before the Court for decision on the merits.

Petitioner was convicted by a jury in Clark County, Ohio, of one count of engaging in a pattern of corrupt activity, one count of trafficking in cocaine, and one count of possession of cocaine; he is serving a ten year sentence in Respondent's custody as a result of these convictions. He took a direct appeal to the Clark County Court of Appeals which affirmed the conviction. He then failed to file a timely appeal to the Ohio Supreme Court and his motion for a delayed appeal was denied. He also applied to the Court of Appeals to reopen his direct appeal on grounds he had received ineffective assistance of appellate counsel, but the Court of Appeals rejected that application.

He now seeks federal habeas corpus relief on the following five grounds:

**Ground One:** The evidence presented at trial was insufficient as a matter of law to support a conviction against Petitioner for violation of O.R.C. §2923.32(A)(1)[,] "A Pattern of Corrupt Activity".

*Supporting facts:* The State failed to establish the existence of an enterprise in that there is not evidence of an ongoing organization separate and distinct from the alleged pattern of corrupt activity. The State alleges evidence of a sale to a confidential informant between co-defendant and Alex, but the State has no direct or circumstantial evidence that there was an enterprise as the term is used in the statute. The evidence presented was insufficient to sustain the conviction of the testimony of a informant who testified to saved himself from another criminal charge.

**Ground Two:** The trial court erred by failing to impanel a proper jury and denying counsel's challenge to the venire.

*Supporting facts:* African American are a distinctive group which appeared to be excluded by this group in venires even though African Americans in Springfield makes up approximately 26% but there was 0% of African Americans on the venire, and witness testified this has happened only once in 15 years. There was not a fair cross section of the community, and the trial court failed to use a talesman of other means [sic] to secure the absent jurors for proper exclusion which Petitioner rights were violated as guaranteed by the Constitution of the United States.

**Ground Three:** The trial court erred by failing to grant the motion to sever.

*Supporting facts:* The State relied exclusively on audio tapes that were not audible. Audio tapes were admitted into testimony over objections of hearsay, lack of proper authentication. Petitioner was not able to exercise his Sixth Amendment right to confront the testimony from the audio tapes because the trial court refused to sever the trial placed petitioner at a great disadvantage to present his defense without jeopardizing the co-defendant defense and placing them at odds with each other which would give the impression of combatants before a jury, but severance would have guaranteed the Petitioner his right to a fair trial.

**Ground Four:** Appellate counsel was ineffective for failing to bring to the appeal court the charges of engaging in a pattern of corrupt activity was against the manifest weight.

*Supporting facts:* Whether the sole testimony of a multiple convicted informant is evidence substantial enough to find Defendant-Petitioner guilty beyond a reasonable doubt.

**Ground Five:** Appellate counsel was ineffective for failing to bring to the Appellate Court that the Trial Court erred to the prejudice of the Appellant in overruling the Appellant's Rule 29 motion for acquittal when the evidence presented by the State was insufficient to prove all the elements of possession of cocaine beyond a reasonable doubt, and also against the manifest weight of the evidence.

> *Supporting facts:* Whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could find the essential elements of possession of cocaine beyond a reasonable doubt, and whether evidence based solely on the testimony of a multiple convicted informant is evidence weightly [sic] enough to sustain such conviction.

(Petition, pp. 5-6A).

With respect to the first three Grounds for Relief, Respondent claims they are procedurally defaulted because Petitioner failed to timely appeal from the judgment of the Court of Appeals to the Ohio Supreme Court.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F. 3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d, at 138.

The 45-day time limit on appeal to Ohio Supreme Court is an adequate and independent state ground of decision. *Bonilla v. Hurley,* 370 F. 3d 494 (6th Cir. 2004).

Of course, a procedural default can be excused if a petitioner can show cause and prejudice. However, lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse this default. *Bonilla*, citing *Murray v. Carrier,* 477 U.S. 478, 494-95, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986). Ineffective assistance of appellate counsel can constitute cause, but such a claim must first be presented to the state courts. *Edwards v. Carpenter,* 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2$^{d}$ 518 (2000), *overruling Carpenter v. Mohr*, C-2-96-447 (S.D. Ohio, 1997), aff'd., 163 F. 3d 938 (6th Cir. 1998).

Petitioner now makes extensive claims of ineffective assistance of appellate counsel by claiming his attorney would not communicate with him, would not brief the issues he wanted raised on appeal, and never sent him a copy of the final court of appeals decision (See Affidavits attached to Traverse). However, when he sought to excuse his late filing in the Ohio Supreme Court, he presented none of this evidence. Instead, he claimed merely that he "believed" his appellate counsel was going to appeal to the Ohio Supreme Court (See Application for Delayed Reopening, Ex. 9 to Return of Writ). The Ohio Supreme Court did not find this a sufficient excuse for the late filing and denied leave to appeal late. This decision was not an unreasonable application of clearly established Supreme Court law, and thus Petitioner's claim of ineffective assistance of appellate counsel as cause for failing to appeal to the Ohio Supreme Court is itself procedurally defaulted.

In the alternative, should the District Court not agree with this procedural default analysis,

the Magistrate Judge offers the following analysis of these three claims on the merits.

## Ground One

In Ground One, Petitioner claims there was insufficient evidence to convict him of engaging in a pattern of corrupt activity, but he argues this Ground in terms of insufficient evidence to show an enterprise independent of the pattern of corrupt activity.

This claim was presented to and decided by the Clark County Court of Appeals. That court recited the evidence as follows:

> The evidence presented by the State at trial demonstrates that Tim Humphrey was a drug dealer who distributed large quantities of cocaine in Springfield, Ohio. One of the people that Tim Humphrey worked closely with in distributing drugs was his cousin, Defendant Rufus Humphrey.
>
> On or about May 21, 2000, Springfield police began an investigation of Tim and Rufus Humphrey. Police utilized the services of a confidential informant, Alex Williams, to make controlled buys of cocaine from both Tim and Rufus Humphrey, and recorded several phone conversations between the informant and the two suspects.
>
> During the police investigation both Tim and Rufus Humphrey engaged in several specific incidents of drug related activity, working together to sell and distribute cocaine. For instance, on May 21, 2000, informant Williams was present in the barber shop operated by Defendant, along with Tim Humphrey, Leonard Dixon, and Rodney White. At that time Tim Humphrey had in his possession a gym bag containing three or four kilos of cocaine, along with two or three pounds of marijuana. With Defendant present, Tim Humphrey sold Leonard Dixon one kilo of cocaine for twenty-six thousand dollars. Tim Humphrey also offered to sell Williams a quarter kilo for nine thousand dollars, did sell cocaine to Rodney White, and gave a quantity of cocaine to Defendant.
>
> On May 23, 2000, Williams and Tim Humphrey had a phone

conversation during which Williams arranged a purchase of cocaine. The following day, May 24, 2000, Williams and Tim Humphrey had another phone conversation during which Tim Humphrey told Williams that he was going to be out of town and that Defendant would make the sale for him to Williams. A few minutes later Defendant paged Williams.

When Williams called Defendant he said Tim Humphrey had talked to him about selling some cocaine to Williams and had given him four ounces to sell, that the transaction would take place at Defendant's home, 522 W. Parkwood Avenue, and that the price would be one thousand two hundred dollars for one ounce of cocaine. Williams went to Defendant's home where he made a controlled buy of one ounce of cocaine from Defendant for one thousand two hundred dollars. At that time Williams observed four ounces of cocaine in Defendant's possession.

On May 30, 2000, Tim Humphrey met Williams at BW-3's Restaurant where Williams made a controlled buy of three fourths of an ounce of cocaine for eight hundred dollars. This transaction was videotaped. Williams had wanted to purchase five ounces on that occasion but Tim Humphrey did not have that quantity available to him.

On June 11, 2000, Williams and Tim Humphrey had a phone conversation wherein Tim Humphrey indicated that his shipment of cocaine had arrived. Williams stated that he wanted to purchase five ounces. Tim Humphrey told Williams to meet with Defendant to make his purchase, but Williams said he would only deal with Tim Humphrey.

The next day, June 12, 2000, Williams and Tim Humphrey had several phone conversations arranging the sale of five ounces to Williams. During one of those conversations, Tim Humphrey told Williams that earlier in the morning he had delivered one-half kilo to Defendant and that he was waiting for Defendant to bring five ounces back to him so he could make the sale to Williams.

Later that same day, Williams proceeded to Tim Humphrey's home, at 1117 W. High Street, where he made a controlled purchase of five ounces of cocaine from Tim Humphrey for five thousand two hundred dollars. This transaction took place in the backyard and was videotaped.

> On June 13, 2000, Williams and Tim Humphrey had a phone conversation wherein Tim Humphrey stated his shipment had arrived and he expected to sell it in one-half kilos for seventeen thousand dollars each. The next day, June 14, 2000, Williams went to Tim Humphrey's home where he observed three or four kilos of cocaine in Tim Humphrey's possession. Subsequently, on June 26, 2000, Tim Humphrey called Williams and said another shipment had arrived and that he had fifty ounces to sell.
>
> As a result of these events, Defendant and Tim Humphrey were jointly indicted on several charges. Defendant was charged with engaging in a pattern of corrupt activity, R.C. 2923.32, with predicate acts reflecting his involvement in the May 24, 2000, and June 12, 2000, drug transactions. He was also charged with trafficking in cocaine, R.C. 2925.03, and possession of cocaine, R.C. 2925.11.
>
> Defendant's motion for separate trials was denied, and he and Tim Humphrey were tried together before a jury. Defendant was found guilty on all charges and the trial court sentenced him to consecutive terms of imprisonment totaling ten years, and fines totaling forty thousand dollars.

*State v. Humphrey*, 2003 Ohio 2825; 2003 Ohio App. LEXIS 2537, ¶¶ 2-13 (Ohio App. 2d Dist. May 30, 2003). The court noted that "[e]nterprise" as defined in R.C. 2923.31(C) includes: "An individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." *Id*. at ¶¶ 25-26. It then analyzed the recited evidence under *State v. Thompkins,* 78 Ohio St. 3d 380, 678 N.E. 2d 541 (1997), concluding:

> Defendant fails to comprehend that the "enterprise" in this case was not a business or formal organization. Rather, consistent with R.C. 2923.31(C) it was "a group of persons (Tim Humphrey and Rufus Humphrey) associated in fact, although not a legal entity," who were working closely together as a continuing unit in an ongoing effort to distribute cocaine in the Springfield area.
>
> The State's evidence clearly demonstrates that a group of persons,

> Tim and Rufus Humphrey, associated together for the common purpose of engaging in a course of criminal conduct; distributing illegal drugs such as cocaine in the Springfield area. Moreover, this was an ongoing organization or entity whose members functioned as a continuing unit. That is sufficient to demonstrate the existence of an "enterprise." *United States v. Turkette* (1981), 452 U.S. 576, 583, 69 L. Ed. 2d 246, 101 S. Ct. 2524. Additionally, the "pattern of corrupt activity" in this case was the series of corrupt acts involving specific incidents of illegal drug activity committed by the participants in the enterprise. *Id*.
>
> The evidence demonstrates that both Tim Humphrey and Defendant participated in this enterprise by continually engaging in a pattern of corrupt acts involving the possession and sale of cocaine. A specific incident of that corrupt activity occurred on May 21, 2000, inside Defendant's barber shop. Defendant was present when Tim Humphrey, who was in possession of three or four kilos of cocaine, sold Leonard Dixon one kilo of cocaine for twenty-six thousand dollars, and then offered the informant in this case one-fourth of a kilo for nine thousand dollars. Tim Humphrey also gave Defendant a quantity of cocaine on that occasion.
>
> Another incident of corrupt activity occurred on May 24, 2000. Tim Humphrey had provided Defendant with several ounces of cocaine to sell to the informant and other people while Tim Humphrey was out of town. On May 24th the informant came to Defendant's home, at which time Defendant sold the informant one ounce of cocaine for one thousand two hundred dollars.
>
> Another incident of corrupt activity took place on June 12, 2000. After Tim Humphrey had provided Defendant with one-half kilo of cocaine to sell, Tim Humphrey arranged a sale of five ounces of cocaine to the informant. When the informant indicated he would only deal with Tim Humphrey, Defendant returned five ounces of cocaine to allow him to complete that sale to the informant.
>
> Viewing the evidence presented in this case in a light most favorable to the State, a rational trier of facts could conclude that all of the elements of engaging in a pattern of corrupt activity were proved beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.

*Id*. at ¶¶ 33-38.

The Supreme Court of the United States has recently elaborated on the standard of review of state court decisions in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685; 122 S. Ct. 1843, 1849-50; 152 L. Ed. 2d 914 (2002). In this case the Ohio Court of Appeals decided Petitioner's sufficiency of the evidence claim applying *State v.*

*Thompkins, supra*, which embodies the same standard as the relevant federal precedent, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Court of Appeals decision is not an unreasonable application of *Jackson v. Virginia*; plainly there was enough evidence for a reasonable juror to find that Tim and Rufus Humphrey were engaged in the ongoing criminal enterprise of selling cocaine. The first Ground for Relief is thus without merit.

## Ground Two

In Ground Two, Petitioner asserts he was denied his right to a trial by a jury representing a fair cross-section of the community because there were no African-Americans in the venire. Here again the Clark County Court of Appeals decided this question as a matter of both state and federal law. While it found that the method prescribed by Ohio statute for excusing jurors had not been followed, it also found there was no evidence of intentional exclusion of African-Americans. *Id*. at ¶¶ 41-48. That was certainly not an unreasonable determination of the facts where a witness, the presiding judge's bailiff, testified without contradiction that there had been only one other occasion in fifteen years where she had seen a jury array without an African-American. The Court of Appeals also noted that the relevant population from which jurors were drawn was Clark County, with an African-American population of 8.9%, rather than the City of Springfield, on which Petitioner relied, which is about 26% African-American. Nor was this an unreasonable application of United States Supreme Court precedent which requires systematic exclusion of a group to create a violation. *See Taylor v. Louisiana*, 419 U.S. 522 (1975).

Petitioner's second Ground for Relief is without merit.

### Ground Three

In his third Ground for Relief, Petitioner claims he was denied a fair trial because the trial court denied his motion to sever.  Allegedly this denied him an opportunity to confront his co-defendant's statement implicating him which was evidenced by an audiotape of the telephone conversation in which the statement occurred.

Failure to try co-defendants separately can create a Confrontation Clause problem when one co-defendant's statement is used against the other but there is no opportunity for cross-examination because the accusing co-defendant exercises his privilege against self-incrimination. *See Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968).  That simply did not happen here as the co-defendant, Tim Humphrey, took the witness stand and was subject to cross-examination.  The third Ground for Relief is therefore without merit.

### Grounds Four and Five

In his fourth and fifth Grounds for Relief, Petitioner argues that his appellate counsel was ineffective for failing to argue that his conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence and for failing to argue that his conviction for possession of cocaine was both against the manifest weight of the evidence and supported by insufficient evidence.

Respondent concedes that these two grounds for relief have been preserved for review by their presentation in Petitioner's application for reopening his direct appeal.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988). The *Strickland v. Washington* test applies to appellate counsel. *Burger v. Kemp,* 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987). The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F. 3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F. 3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F. 3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F. 3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F. 3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F. 3d 155, 161-62 (6th Cir. 1994). Counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F. 3d 688 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F. 3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be

effective." *McFarland,* quoting *Scott v. Mitchell*, 209 F. 3d 854, 880 (6th Cir. 2000)(*citing Strickland*).

In this case it is extremely unlikely that the appeals court would have adopted any one of the three arguments which Petitioner says should have been made on his behalf.

It actually found that there was sufficient evidence of a pattern of corrupt activity. In doing so, it expressed no doubt or hesitancy about the proof: " The State's evidence **clearly demonstrates** that a group of persons, Tim and Rufus Humphrey, associated together for the common purpose of engaging in a course of criminal conduct; distributing illegal drugs such as cocaine in the Springfield area." *State v. Humphrey, supra*, at ¶ 34 (emphasis added). It did not summarize any contrary evidence, but instead concluded that Petitioner had misunderstood the meaning of the term "enterprise." Given this state of the record, it is unlikely it would have found that the conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence. Therefore Petitioner suffered no prejudice by his counsel's failure to make this argument.

With respect to possession of cocaine, in the course of its opinion the Court of Appeals recited three instances in which the evidence showed Petitioner was in actual possession of cocaine. Thus it is unlikely the court would have been amenable to the argument that the conviction on this count was either supported by insufficient evidence or against the weight of the evidence actually presented. Grounds Four and Five are therefore without merit.

## Conclusion

The Petition herein should be dismissed with prejudice. Because reasonable jurists would

not disagree with that conclusion, Petitioner should be denied a certificate of appealability and leave to appeal *in forma pauperis*.

January 8, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).